UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RUDY ROA,

                              Petitioner,                    02 Civ. 6116 (PKC)(FM)

              -against-

                                                             MEMORANDUM AND ORDER
                                                             ADOPTING REPORT AND
                                                             RECOMMENDATION

LEONARD A. PORTUONDO,
Superintendent, Shawangunk
Correctional Facility,
                              Respondent.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

              In January 1995, petitioner Rudy Roa was convicted of two counts of

Second Degree Murder, one count of Second Degree Attempted Murder and two counts

of First Degree Robbery after trial by jury in New York Supreme Court, New York

County.  In the aggregate, Roa was sentenced to thirty-three and one-third years to life in

prison.  Prior to sentencing Roa, the Honorable Frederic Berman, then a Justice of the

Supreme Court, New York County, observed that "in [his] twenty two years as a Judge

[he had] not had a case which [he] felt was more cruel and vicious."

              Roa filed a petition for a writ of habeas corpus on July 31, 2002.  (Doc. #

1.)  The prior history of this proceeding is set forth in the September 10, 2007 Report and

Recommendation (the "R & R") of Magistrate Judge Frank Maas.  (Doc. # 47.)  This

matter was reassigned to this Court on October 16, 2006.  (Doc. # 36.)  Roa filed an

amended habeas petition (the "Amended Petition") on December 14, 2006.  (Doc. # 42.)

In the forty-eight page R & R, Magistrate Judge Maas, recommended that Rudy Roa's Amended Petition be denied. Roa requested an extension to file objections to the R & R by letter dated October 22, 2007. I ordered that the final deadline to file objections be extended to November 30, 2007. (Id.) Roa's objections were not received by the Court until December 4, 2007. (Doc. # 48.) The objections filed by Roa are undated and nothing in the record indicates when they were delivered to prison officials for mailing. However, because Roa is an incarcerated pro se petitioner, his objections were received less than one week after the deadline and no objection regarding timeliness has been made, I will consider the petitioner's objections.

Through the lens of petitioner's objections, I have conducted a de novo review of the record. 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P. For the reasons that follow, I adopt the R & R in its entirety and dismiss the Amended Petition.

I.      Procedurally Defaulted Claims

Judge Maas correctly observed that several claims in the Amended Petition related to Roa's post-arrest statement and to an alleged ineffective assistance of counsel may not be considered by this Court because Roa procedurally defaulted on those claims in state court. Procedural defaults in state court divest federal courts of jurisdiction to hear the defaulted claims unless the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred . . . ."). Showing

cause for default requires a petitioner to put forth "some objective factor external to the defense" which caused the claim not to have been previously raised. <u>Gonzalez v. Sullivan</u>, 934 F.2d 419, 422 (2d Cir. 1991) (quoting <u>Murry v. Carrier</u>, 477 U.S. 478, 488 (1986)). Objective impediments to compliance with the procedural rules which would excuse a petitioner's noncompliance for habeas purposes include: 1) the factual or legal basis of a claim was not reasonably available to petitioner's counsel; 2) interference by officials made compliance impracticable; and 3) ineffective assistance of counsel. <u>Murray</u>, 477 U.S. at 488.

To demonstrate "actual prejudice" under the standard for excusing a procedural default, a habeas petitioner must show the constitutional errors raised in the petition actually and substantially disadvantaged petitioner's defense so that he was denied "fundamental fairness." <u>Id.</u> at 494. To show that the district court's failure to hear the claims will result in a fundamental miscarriage of justice, a petitioner must show that he is "actually innocent." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001) (citing <u>Coleman</u>, 501 U.S. at 748-50). With respect to the ineffective assistance of counsel impediment, the Second Circuit has held that defense counsel's "ineptitude [must] rise[] to the level of a violation of a defendant's Sixth Amendment right to counsel" to establish cause for procedural default in the context of a habeas petition. <u>Id.</u> at 91 (citations omitted). As outlined below, petitioner cannot meet the standards required to have the defaults excused on any of the procedurally defaulted claims.

a. Post-Arrest Statement Claims

The Amended Petition asserts that Roa's post-arrest statement was introduced into evidence at trial in violation of his Sixth Amendment right to counsel.

Roa raised this claim, prior to perfecting his direct appeal, in the first of three section 440.10 motions he filed in an attempt to have his conviction vacated. (Amended Petition, Ex. E at 1.) The trial court rejected Roa's claim because section 440.10(2)(b) requires the denial of a motion to vacate a judgment when, at the time of the motion, the subject judgment is either still appealable or the appeal is pending. N.Y. Crim. Proc L. § 440.10(2)(b). Roa's subsequent direct appeal failed to assert that claim, thus, it was not exhausted at the state level. It is now, however, incapable of being exhausted because New York law permits criminal defendants only one direct appeal and one application for leave to appeal to the Court of Appeals. Spence v. Sup't, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2d Cir. 2000). Moreover, Roa cannot obtain collateral review of this claim in state court because once a defendant has prosecuted his direct appeal, he may not obtain review of an issue that could have been included in that appeal. Id.; Coleman 501 U.S. at 735 n.1 (if no procedural avenue remains to exhaust a claim in state court, the claim is procedurally defaulted for federal habeas purposes). Thus, Judge Maas correctly concluded that because the Sixth Amendment post-arrest statement claim was not included in Roa's direct appeal, it is in procedural default and this Court is divested of its jurisdiction to consider its merits.

  The claim that Roa was not adequately informed of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), before being questioned in police custody suffers from the same procedural malady. That claim was first made in an omnibus pretrial motion which the trial court denied. Roa subsequently failed to include it in his direct appeal or in any of his post-conviction motions. Because Roa procedurally

defaulted on that claim by not including it in his direct as-of-right appeal or in any of his section 440.10 motions, this Court lacks jurisdiction to hear it. See Coleman, at 750.

The admissibility of Roa's post-arrest statement is also challenged on due process and equal protection grounds in the Amended Petition, but, like the Miranda claim, those claims were not raised in either his direct appeal or in any of his post-conviction motions and cannot be exhausted now because of the one-appeal limit imposed by New York law. Spence, 219 F.3d at 170. They are therefore procedurally defaulted and not properly before this Court.

As observed by Judge Maas, Roa's defaults cannot be excused by establishing cause, actual prejudice or a fundamental miscarriage of justice with respect to the claims relating to his post-arrest statement. He has shown no objective impediments to compliance stemming from either a lack of information available to his attorney or from official interference; nor has he demonstrated that any constitutional errors denied him fundamental fairness.

Roa has also failed to show that he is actually innocent under any standard. Roa admitted he entered the apartment where the robbery, murder and attempted murder took place with the intent to conduct a robbery with a gun. (Hearing Tr. at 31-36.) This admission is corroborated by Roa's fingerprints which were found on a light fixture which concealed a hidden void used as a drug cache. (Id.) At his trial, the only question before the jury was whether Roa or his accomplice fired the shots. An eyewitness testified that it was Roa who ordered her to "get down" on the floor before stealing her jewelry, murdering her boyfriend and then shooting her in the back of the head. (Tr. 93-96, 113-114, 190.) In the face of this evidence against him, Roa replies

that "Petitioner has always asserted that he is innocent, but does not have the proof (other that [sic] his own testimony) to prove it." (Pet. Objections at 2). Petitioner has not made an adequate showing that he is actually innocent of the crimes for which he was convicted for purposes of being excused from his procedural defaults.

In addition, Roa has not demonstrated that the defaults relating to his post-arrest statement claims may be excused because they were caused by ineffective assistance of counsel. Although he asserts his trial counsel failed "to properly preserve and argue" his right to counsel while making his post-arrest statement, he ignores the fact that his trial counsel raised that issue during a pretrial suppression hearing. (Hearing Tr. 105-115, 177-78.)

Moreover, Roa's procedural defaults cannot be excused by his appellate counsel's failure to raise his post-arrest statement claims on appeal because putting forward the strongest issues on appeal at the expense of leaving others out does not constitute ineffective assistance of counsel. To establish ineffective assistance of appellate counsel through failure to include claims in an appeal, a petitioner must establish that counsel failed to raise "significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Jones v. Barnes, 463 U.S. 745, 751-54 (1983) (for habeas purposes, defense counsel assigned to prosecute appeal does not have constitutional duty to raise every nonfrivolous issue). There is a "strong presumption that [counsel's] conduct falls within the wide range of reasonable professional assistance" thus requiring a petitioner to "overcome the presumption that, under the circumstances, the challenged action might be

considered sound . . . strategy."  Strickland v. Washington, 466 U.S. 668, 689 (1984)

(citation and internal quotation marks omitted).

       While it is true that appellate counsel failed to assert the Miranda, Fifth

and Fourteenth Amendment claims related to Roa's post-arrest statement on appeal,

nothing in the record indicates that the issues argued on appeal were "clearly and

significantly weaker" than the post-arrest statement claims made in the Amended

Petition.  Mayo, 13 F.3d at 533.   Indeed the trial court concluded that the Miranda claim,

raised during a pretrial suppression hearing, was meritless because of its factual finding

that Roa was fully advised of his Miranda rights before knowingly and voluntarily

waiving them and that the police were not aware Roa had retained counsel in this case at

the time he made his post-arrest statement.  (Appendix, Exh. B at 15.)  In habeas

proceedings, state court findings of fact are presumed to be correct and petitioners have

the burden of rebutting the state court's findings by clear an convincing evidence.  See

Leslie v. Artuz, 230 F.3d 25, 31 (2d Cir. 2000).  On this record, Roa has not and cannot

meet this burden.

       b.   Ineffective Assistance of Counsel Claims

       Separate from the issue of whether ineffective assistance of counsel can

excuse Roa's procedurally defaulted claims is the issue of whether certain of the

ineffective assistance of counsel claims raised in the Amended Petition are themselves

procedurally defaulted.  Roa claims his trial lawyer's failure to object to bolstering of

testimony by the prosecutor and to the court's jury instruction regarding eyewitness

testimony deprived him of his constitutional right to counsel.  Like the claims related to

his post-arrest statement, these claims, initially made in his second section 440.10

motion, submitted after his direct appeal was perfected, are procedurally defaulted.  In

denying the 440.10 motion, the state court held that the claims should have been raised

on direct appeal as they were based entirely on facts contained within the record on

appeal.  (Ex. J. at 4-5.)  Because the trial court ruled these claims procedurally barred,

they cannot be heard by this Court.  Coleman, 501 U.S. at 750.

        In Roa's third 440.10 motion, he claimed, as he does in his Amended

Petition, that his trial counsel provided ineffective assistance because he failed to contact

Roa's prior counsel and would not allow Roa to testify on his own behalf.  Although the

state court rejected these claims as unmeritorious, it also deemed them procedurally

barred because Roa was not justified in failing to raise them in his prior section 440.10

motions.  N.Y. C.P.L. § 440.10(3)(c) (state court "may deny a motion to vacate a

judgment when . . . [u]pon a previous motion made pursuant to this section, the defendant

was in a position adequately to raise the ground or issue underlying the present motion

but did not do so.")  The claims are procedurally defaulted for habeas purposes because a

state court's reliance on a procedural bar prohibits a petitioner from seeking habeas

review even though the state court ruled on the merits in the alternative.  Glenn v.

Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (procedural default is an independent and

adequate state ground, even where the state court has also ruled in the alternative on the

merits.).  However, even if these claims were not procedurally defaulted, they

nonetheless would fail on the merits.

        Roa contends that had his prior attorney been contacted by his trial

counsel, she could have testified at the pretrial suppression hearing that she represented

Roa, not only on a past, unrelated case, but also on the present case.  This testimony

would have resulted in the suppression of his post-arrest statement, Roa asserts, and failing to call her violated his constitutional right to counsel. Judge Maas concluded correctly, however, that, in light of a sworn affirmation submitted by Roa's prior attorney in which she stated that "at the times of any statements allegedly made to law enforcement officials" she represented Roa "in connection with outstanding felony bail jumping charges in New York County Supreme Court," she could not have later testified with any measure of credibility that Roa had also retained her to represent him in this case prior to his arrest. (May 5, 1993 Affirm. Of Susan M. Russell, Esq., ¶ 13.) In view of the prior affidavit, Roa's trial counsel cannot be faulted for failing to call Roa's prior attorney to testify in a suppression hearing.

With respect to the merits of Roa's contention that his constitutional rights were violated by his trial attorney's failure to call him as a witness, he claims that he wanted to testify on his own behalf but was "coerced" by his attorney into waiving that right. In rejecting this claim in Roa's third 440.10 motion, the trial court stated:

> The defendant stated that he understood his options and that he did not
> need to discuss them further with [trial counsel]. Now, all of the sudden, .
> . . the defendant claims that, contrary to what he informed the judge while
> speaking on the record, he really did not understand his rights. This claim
> is contradicted by the record.

(Appendix, Exh. L.) As Judge Maas correctly concluded, this claim is without merit. The record reveals that Roa was fully informed by the trial court of his "absolute right to testify" and given an opportunity to further consider his decision not to. (Trial Tr. at 520-21.) Roa passed on that opportunity and voluntarily declined the option to testify in open court. (Id.)

II.     Unexhausted Claims

Unlike a procedurally defaulted claim, the Antiterrorism and Effective Death Penalty Act ("AEDPA") allows federal courts to exam the merits of unexhausted claims and deny a writ of habeas corpus based on that examination. 28 U.S.C. 2254(b)(2). Here, Judge Maas determined it prudent to examine the merits of Roa's unexhausted claims because of the lengthy period of time this case has been pending in federal court. After doing so, he recommended that all of the ineffective assistance of trial counsel and appellate counsel claims be dismissed as meritless. Judge Maas recommended the same with respect to Roa's claim that the Appellate Division violated his Fifth and Fourteenth Amendment due process and equal protection rights by failing to address facts or hold hearings in connection with its decision denying petitioner relief. Having determined Judge Mass's recommendations to be correct, I comment briefly on those claims.

a.   Ineffective Assistance of Trial Counsel

i.   Pre-Indictment Delay

Roa contends that trial counsel should have but failed to request a Singer hearing to challenge the prosecution's delay in arresting and indicting him after he was identified by the police. See People v. Singer, 44 N.Y.2d 241 (1978) (unjustifiable lengthy delay in commencing prosecution may require dismissal even without a showing of actual prejudice). The prosecution intentionally delayed arresting and indicting him, Roa claims, so that the police could get his statement without his counsel being present. Judge Maas correctly concluded that this unexhausted claim is meritless because, inter alia, the record reveals the delay of approximately nine months was justified and not part

of a strategy to deny Roa his constitutional rights. Extensive efforts were made to apprehend Roa from the time he was identified until he was apprehended. The detective in charge of the case conducted surveillance of Roa's neighborhood, circulated flyers containing Roa's photograph and created "wanted cards" to give to fellow officers. (Suppression Hearing Tr. at 16-18, 86-88.) While it is true that during the nine months between his identification and his arrest Roa had voluntarily surrendered in connection with another alleged crime and had made court appearances in connection therewith, the detective in charge of this case testified that he was unaware of those circumstances and that had he been aware, Roa "would have been apprehended a lot sooner." (Id. at 88.) Roa's unexhausted pre-indictment delay claim is without merit.

    ii.  Cross Examination of Detective Imperato / Pretrial Investigation

       Roa claims that he received ineffective assistance of counsel because trial counsel did not ask the detective in charge of investigating the crime for which Roa was convicted whether he knew that Roa was not "on the run" from police and that he had, in fact, turned himself in connection with an unrelated case. However, the prosecution never argued that Roa was "on the run" or otherwise seeking to avoid apprehension, and, as Judge Maas observed, no competent criminal defense attorney would needlessly seek to inform a jury of his client's involvement in other crimes. Thus, petitioner's proposed area of inquiry would have been counterproductive. Trial counsel's failure to pursue this line of questioning with the detective does not constitute ineffective assistance of counsel.

       Roa also asserts that his trial counsel was constitutionally ineffective because he conducted an inadequate pretrial investigation which failed to apprise him that

the lineup in which Roa was identified by the victim-eyewitness was tainted. Roa contends that he told his trial counsel that the detective in charge of investigating the crimes for which he was convicted took a photograph of him prior to the lineup and likely showed it to the victim-eyewitness, enabling her to quickly pick him as the perpetrator. Specifically, Roa claims:

> Counsel was informed by the defendant at the hearings that "detective Imperato took a [P]olaroid photograph of me, by myself, in the absence of counsel, before the line-up" and "that I was the only one wearing a burgundy sweatshirt that stood out", the defendant also informed counsel that "if the witness was shot in the head as they claim and has problems with her vision, the detective could have shown her that photo, which was probably the reason the witness identified me as the perpetrator so quickly.

(Appendix, Exh. H at 6-7.) Judge Maas's R & R, however, correctly concludes that this claim is meritless because, inter alia, the victim-eyewitness knew Roa before the crime occurred and had identified him in a photo array only a few days after the crime was committed, months before the lineup of which petitioner complains. (Hearing Tr. at 52; Trial Tr. at 114-15.) Trial counsel's refusal to pursue a purely speculative line of inquiry at Roa's behest did not constitute ineffective assistance of counsel.

Citing prison visitation logs as evidence that the time trial counsel spent conferring with him was inadequate, Roa contends he received ineffective assistance of counsel because of trial counsel's failure to adequately prepare for trial. Roa also points to trial counsel's entreaties that he accept a plea as support for the assertion that trial counsel did not adequately prepare. The state court rejected this claim, made in Roa's second 440.10 motion, as "insufficient to substantiate the claim of deprivation of effective counsel." (Appendix, Exh. J at 3) Judge Maas reached the same conclusion. Indeed, Roa has failed to make a showing that any additional time spent with him or

otherwise preparing for trial would have changed the result of the trial—and that is what Strickland requires. 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

   iii. Bolstering

    Separate from Roa's procedurally defaulted claim of ineffective assistance of counsel based on trial counsel's failure to object to prosecutorial bolstering is the claim that the alleged bolstering independently violated his Fourteenth Amendment due process and equal protection rights. The independent bolstering claim, however, appears to be a mislabeled improper vouching claim. In general, a prosecutor may not "vouch for their witnesses' truthfulness" or "express . . . personal belief[s] or opinion[s] as to the truth or falsity of any testimony or evidence or the guilt of the defendant." U.S. v. Modica, 663 F.2d 1173, 1178-79 (2d Cir. 1981) (citation and internal quotation marks omitted). Notwithstanding the rule against prosecutorial vouching, improper remarks by prosecutors "justify a reversal . . . only if it caused the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." U.S. v. Carr, 424 F.3d 213, 227 (2d Cir. 2005) (citation and internal quotation marks omitted); Modica at 1182 (defendant was not substantially prejudiced or deprived of a fair trial despite numerous improper remarks by prosecutor).

    Petitioner complains of two statements made by the prosecutor during trial about the eyewitness identification of Roa, one during the government's opening statement and one made during its closing argument. In her opening statement, the prosecutor described to the jury how the victim-eyewitness had previously identified Roa

as the man who shot her and killed her boyfriend and said "I expect she'll still remember what he looked like and she'll be able to identify him in court." (Trial Tr. 21-22.) During her closing, the prosecutor said several times, "I submit to you" followed by various iterations of statements describing the eyewitness's identification of Roa as truthful and correct. (Trial Tr. at 574, 578-79, 583-84, 594.) Judge Maas concluded that the prosecutor's remarks during her opening statement were permissible as an overview of what the government believed and expected the evidence would show and were not improper vouching for the eyewitness or an improper expression of the prosecutor's personal beliefs. Regarding the remarks made during the prosecutor's closing argument, Judge Maas concluded they were not improper as they referenced the evidence that was presented and expressed no personal opinions. See United States v. Perez, 144 F.3d 204, 210 (2d Cir. 1998) (prosecutor's arguments not improper simply because they begin with, "I submit"). Judge Maas is correct on both accounts. Roa's constitutional rights were not violated by the prosecutor's statements.

        b.   Ineffective Assistance of Appellate Counsel

        Roa's appellate counsel was constitutionally ineffective, the Amended Petition asserts, because he failed to include an argument in the appellate brief that trial counsel was constitutionally ineffective for failing to object to the trial court's eyewitness testimony jury charge. Although appellate counsel did brief the argument that the court's jury charge was inadequate, he did not assert that trial counsel was ineffective for failing to object to that charge. After the Appellate Division declined to review the claim, Roa asserted ineffective assistance of trial counsel in a 440.10 motion based on trial counsel's failure to object. Roa made this claim notwithstanding the Appellate Division's

statement that had the claim been preserved, it would have found that the trial court "delivered a full and complete identification charge." People v. Roa, 270 A.D.2d 103, 103 (1ˢᵗ Dep't 2000). The claim challenging trial counsel's decision not to object to the jury charge was deemed procedurally barred by the state court because it should have been included in Roa's direct appeal. Roa, now asserts, however, that the jury instruction violated his Fifth and Fourteenth Amendment due process rights in addition to his Sixth Amendment right to effective appellate counsel.

In the due process context, a habeas petitioner is not entitled to relief unless "there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution." Jones v. United States, 527 U.S. 373, 390 (1999) (internal quotation marks and citation omitted). Whether the jury instruction violated the petitioner's Fifth and Fourteenth Amendment rights turns on "whether the ailing instruction by itself so infected the entire trial that the resutling conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned." Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (internal quotation marks and citations omitted). As already noted, it cannot be seriously disputed that Roa was in the apartment on the day of the shootings intending to commit a robbery with a gun. Thus, Judge Mass concluded correctly that, in that context, the jury charge regarding eyewitness identification was sufficient to enable the jury to decide the narrow issue of whether Roa or his cohort fired the shots.

With respect to the ineffective assistance of appellate counsel claim, it is foreclosed by the rigorous standard enunciated in Strickland, 466 U.S. at 689 and Jones, 463 U.S. at 390. In addition, and as Judge Maas correctly concluded, the instruction

given conformed to the recommended practice in New York courts and incorporated the expanded pattern jury instructions lauded by the Second Department in People v. Daniels, 88 A.D.2d 392, 401 (2d Dep't 1982).  It thus cannot be said that the instruction violated due process.

   c. Alleged Constitutional Violation by the Appellate Division

    Finally, Roa's claim that the Appellate Division denied him his Fifth and Fourteenth Amendment due process and equal protection rights fails.  The specific claim is that the Appellate Division violated Roa's constitutional rights by failing to address the facts as presented by Roa, failing to cite any case law in its decision rejecting Roa's appeal and petition for a writ of coram nobis, and failing to order a hearing prior to issuing a summary order.  Judge Maas correctly concluded that the record was sufficient for the Appellate Division to determine the merits of Roa's claims without a hearing and that it is well within the Appellate Division's right to reject claims summarily.

III.    Conclusion

The Amended Petition is DENIED. The Clerk is directed to enter judgment in favor of respondent.

Petitioner having not made a substantial showing of the denial of a constitutional right on any ground, a certificate of appealability will not issue. 28 U.S.C. § 2253; Lozada v. United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
April 22, 2008